UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD JONES,<br><br>                Plaintiff,<br><br>         v.<br><br>B. MCKOY et al.,<br><br>                Defendants. | Civil No. 13-7832 (KM) (MAH)<br><br>**OPINION** |

## I.    INTRODUCTION

Plaintiff pro se, Ronald Jones, commenced this action on December 23, 2013, by filing a complaint under 42 U.S.C. § 1983. ("Cplt.", DE 1) The action was initially administratively terminated, as the complaint included a defective application to proceed *in forma pauperis*. (DE 2.) Mr. Jones subsequently filed a proper *in forma pauperis* application, and the action was reopened. (DE 3, 5.) Thereafter, the action was again administratively terminated because Mr. Jones failed to update his address with the Court in compliance with Local Civil Rule 10.1 and could not be contacted. (DE 6, 7.) Thereafter, Mr. Jones provided the Court with an updated address. (DE 8.) The Court now reopens this action and undertakes a screening of the complaint pursuant to 28 U.S.C. 1915(e)(2)(B). For the reasons explained herein, the action is dismissed in part but will be permitted to proceed in part.

## II.    THE COMPLAINT

The bulk of Mr. Jones's 342-paragraph complaint is a recitation of his interactions with officials of Northern State Prison ("NSP") between August 2008 and his ultimate release from prison on September 28, 2012. From this intricate chronology of events, I extract six distinct

types of wrongs that Mr. Jones alleges he suffered: (1) erroneous withholding of portions of Mr. Jones's wages and work credits for his prison job; (2) improper extensions of Mr. Jones's release date; (3) assignments to top bunks and upper prison tiers despite a medical directive that he be assigned a bottom bunk in a ground-level cell; (4) denial of adequate access to the prison law library; (5) transfers to undesirable prison units; and (6) unjustified searches of his cell. (*See* Cplt. ¶¶ 23–323.) Mr. Jones also raises a number of allegations surrounding discipline that he was subjected to in August–September 2011, including claims that he was falsely accused and convicted of threatening a corrections officer; moved to another cell pending charges, during which time he was deprived for two weeks of his eyeglasses, toothbrush, and toothpaste; tahtboth his hearing and the resulting decision were delayed beyond permissible timelines; and that some of his personal belongings went missing while his charges were pending.[1] (*See* Cplt. ¶¶ 101–208.)

Mr. Jones asserts against the defendants, who are all corrections officers or prison administrators, claims under 42 U.S.C. § 1983 for deprivation of due process, violation of his equal-protection rights, cruel and unusual punishment, inadequate medical treatment, retaliation, false imprisonment, denial of access to the courts, and conspiracy.[2] (Cplt. ¶¶ 324–39.) He seeks a declaratory judgment that his rights were violated, injunctive relief against the defendants barring further harassment or retaliation, and compensatory and punitive damages. (*Id.* ¶¶ 340.)

---

[1]   Mr. Jones explains that his guilty determination was "rescinded" upon an administrative appeal and that a new hearing was ordered. (Cplt. ¶ 211.) The complaint does not make clear whether a second hearing ever occurred.

[2]   Mr. Jones refers only to federal law and alleges that he has "no adequate state remedy at law." (*See* Cplt. ¶ 336.) Accordingly, I do not construe his complaint as asserting any claims under state law. I note, however, that any state tort claim related to his alleged deprivations of wages and property or the purportedly false disciplinary charges would be barred by the applicable two-year tort statute of limitations. *See infra*, Part IV.a.

2

## III. LEGAL STANDARDS

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to sua sponte dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se

litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. That section provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV. ANALYSIS

### a. Timeliness

I first assess the timeliness of Mr. Jones's Complaint. "Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint sua sponte under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim." *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111–12 (3d Cir. 2013); *see also Hunterson v. Disabato*, 244 F. App'x 455, 457 (3d Cir. 2007). Causes of action under 42 U.S.C. § 1983 are

4

subject to the same two-year statute of limitations as claims for other personal injuries under New Jersey state law. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)); *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 349 (D.N.J. 2015) (citing *Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 828 (3d Cir. 2011)). The accrual of a cause of action is a matter of federal law and generally coincides with the time that the plaintiff suffers injury. *See Kach v. Hose*, 589 F.3d 626, 634–35 (3d Cir. 2009).

Mr. Jones filed his complaint with the court on December 23, 2013.[3] (DE 1) Thus, any claims that accrued prior to December 23, 2011 are facially untimely. I will consider, however, whether the limitations period may have been suspended or tolled. "'State law, unless inconsistent with federal law, also governs the concomitant issue of whether a limitations period should be tolled.'" *McPherson v. United States*, 392 F. App'x 938, 944 (3d Cir. 2010) (quoting *Dique*, 603 F.3d at 185). Statutory tolling under New Jersey law must be based on a specifically identified basis. *See, e.g.*, N.J. Stat. Ann. § 2A:14–21 (minority or insanity); N.J. Stat. Ann. § 2A:14–22 (non-residency of persons liable). Nothing in the complaint, however, supports any statutory basis for tolling.

Equitable tolling under New Jersey law may arise "where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass,' or where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." *Cason v. Arie St. Police Dep't*, No. 10–497, 2010 WL 2674399, at *5 n.4 (D.N.J. June

---

[3] Because Mr. Jones was not incarcerated when he filed his complaint, there is nothing to suggest that he could receive any benefit under the "prison mailbox rule." *See Houston v. Lack*, 487 U.S. 266, 270–71 (1988). I note that the envelope in which Mr. Jones submitted his complaint bears a residential return address and is postmarked December 20, 2013. (*See* DE 1- 2.)

5

29, 2010) (quoting *Freeman v. State,* 347 N.J. Super. 11, 31 (Super. Ct. App. Div. 2002)). Again, the complaint does not articulate any basis for equitable tolling. Accordingly, I will dismiss as untimely all claims that accrued before December 23, 2011. This includes all of Mr. Jones's claims concerning the disciplinary charge against him and his related punitive confinement in August and September 2011.

### b. Cruel and Unusual Punishment and Inadequate Medical Treatment

An Eighth Amendment claim under the Cruel and Unusual Punishment Clause includes both a subjective and an objective component: (1) that the defendant prison official acted with a culpable state of mind and (2) that the conduct in question was sufficiently harmful to become a constitutional violation. *See Ricks v. Shover,* 891 F.3d 468, 473 (3d Cir. 2018). Cruel and Unusual Punishment claims may be divided into those alleging excessive force and those concerning the conditions of confinement. *See Hudson v. McMillian,* 503 U.S. 1, 8–9 (1992). AS to the latter, the Eighth Amendment requires prison officials to "provide humane conditions of confinement," but it "'does not mandate comfortable prisons.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is a part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson,* 503 U.S. at 9 (internal quotation marks and citations omitted).

A claim may encompass, not just direct infliction of harm, but also deliberate indifference to a medical need. To state a claim, an incarcerated plaintiff must allege the existence of a serious medical need and that facility staff demonstrated deliberate indifference to

6

that medical need. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017); *Mattern v. City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2016); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). The Third Circuit has stated that "a medical need is 'serious' for purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mattern*, 657 F. App'x at 139 (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

A finding of deliberate indifference requires a demonstration that the defendant had the requisite state of mind, i.e., knowledge of a serious medical risk and disregard for that risk. *See Parkell v. Danberg*, 833 F.3d 313, 335, 337 (3d Cir. 2016); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (finding that an Eighth Amendment violation requires a showing of "obduracy and wantonness"); *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (equating deliberate indifference with at least "reckless[] disregard [for] a substantial risk of serious harm."). The Third Circuit has identified a variety of forms that deliberate indifference may commonly take, including "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell*, 833 F.3d at 337 (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Natale*, 318 F.3d at 582. A mere "inadvertent failure to provide adequate medical care"—*i.e.*, negligent diagnosis or treatment—will not create an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Parkell*, 833 F.3d at 337.

Mr. Jones's Eighth Amendment medical claims alleges that, because of his knee and back injuries, a medical pass entitled him to assignment to a bottom bunk in a ground-floor cell, but that the prison authorities failed to give him such a bunk assignment. (*See* Cplt. ¶ 328.) The relevant allegations dating from within the limitations period (*i.e.*, after December 23, 2011), assumed to be true for purposes of this motion to dismiss, are as follows: After numerous requests for a transfer from NSP's F-Unit, on April 4, 2012, Mr. Jones was moved to A-Unit, but assigned a fourth-tier cell. (*See* Cplt. ¶¶ 277, 279, 283, 290, 292, 295, 298–99.) On the same day, he alerted defendant Sgt. Castro that he had a medical directive to be assigned a bottom bunk in a ground-floor cell, and Sgt. Castro "stated that he would take care of this." (*Id.* ¶ 299.) When the bunk reassignment did not occur, on April 1, 2012, Mr. Jones spoke to defendant Sgt. Mercado on April 10, 2012, and again to Sgt. Castro on April 11, 2012. Both said they would address the issue. (*See id.* ¶¶ 301–02.) Mr. Jones alleges that on April 24, 2012, he submitted an administrative remedy form concerning Sgt. Castro's failure to reassign him to a bottom bunk in a ground-floor cell. (*Id.* ¶ 305.) On April 26, 2012, he again again talked to Sgt. Mercadoexplaining that a corrections lieutenant had given verbal approval of a transfer to a bottom bunk in a lower cell. This time, Sgt. Mercado "stated that he didn't believe the Plaintiff." (*Id.* ¶ 308.) Mr. Jones sent a letter to defendant Commissioner Lanigan's office concerning this issue on April 27, 2012. He submitted further administrative remedy forms on May 10, May 15, and May 18, 2012. (*Id.* ¶¶ 309–12.) On June 12, 2012, again asked Sgt. Mercado about being moved. Sgt. Mercado became "somewhat irate" and "told the Plaintiff that he would speak with the area [lieutenant] about having the Plaintiff moved somewhere in the prison." (*Id.* ¶ 316.) He explains that, later that day, he was moved back to F-Unit, though he does not state what bunk or level he was placed on. (*Id.* ¶¶ 317–18.)

8

These allegations are sufficient to survive this Court's preliminary screening as a claim of deliberate indifference to a serious medical need against Sgt. Castro and Sgt. Mercado. Mr. Jones has sufficiently alleged that his knee and back injury constituted a serious medical condition as he has asserted that prison medical staff had determined that they required his assignment to a bottom bunk in a ground-floor cell. *See Mattern*, 657 F. App'x at 139. Sgt. Castro's and Sgt. Mercado's refusal to reassign Mr. Jones to a ground-floor cell could be interpreted as deliberate indifference to the need for medical treatment prescribed by the prison authorities themselves. *See Parkell*, 833 F.3d at 337. Prior decisions from within this District have found similar claims sufficient to survive preliminary screening. *See Manns v. Sims*, No. 17-3815, 2018 WL 2230550, at *6 (D.N.J. May 16, 2018) (permitting Eighth Amendment claims to proceed against defendants who "denied him his prescribed pain medication, refused to honor his first-floor and bottom-bunk passes, and ignored his complaints of constant pain"); *Adeyi v. FCI Ft. Dix Health Servs.*, No. 09-5316, 2010 WL 1838463, at *6 (D.N.J. May 4, 2010) (finding that bottom-bunk pass demonstrated serious medical need and that refusal "to relieve plaintiff from snow removal and top bunk assignment" supported allegation of deliberate indifference); *Jones v. Glover*, No. 09-2506, 2010 WL 2326187, at *8–*10 (D.N.J. June 7, 2010). Accordingly, these claims will be permitted to proceed as against Sgt. Castro and Sgt. Mercado only. As the complaint does not allege personal involvement by any other defendant, these Eighth Amendment claims are dismissed as against all other defendants.

The complaint also alleges that that Mr. Jones submitted a prison medical request to see a doctor on March 29, 2012, and was seen by a doctor five days later, on April 3, 2012. (*See* Cplt. ¶¶ 296–97.) He also allegedly sought medical treatment on April 10 and on April 16, 2012, but it appears that he received treatment in response, and there are no further allegations in relation to

9

these medical complaints. (*See* Cplt. ¶¶ 300, 303–04.) These additional allegations do not support any separate medical-treatment claim.

The Complaint alleges that unpaid wages deprived him of the means "to acquire basic hygiene items and human essentials," and indeed "the bare necessities of life." (Cplt. ¶ 331.) The last month for which Mr. Jones was allegedly denied proper pay was November 2011. (Cplt. ¶ 273 (citing account stated dated Dec. 20, 2011.) The complaint was therefore filed out of time, *i.e.,* more than two years after these claims had accrued. In any case, Mr. Jones indicates that he subsequently received his pay (though not his work credits) for October and November 2011. (Cplt. ¶ 284.) More fundamentally, it is "well-settled that prisoners have . . . no inherent constitutional right to wages for work performed while incarcerated." *Loyal v. Lanigan*, No. 15-5769, 2016 WL 4545308, at *4 (D.N.J. Aug. 30, 2016) (collecting cases).

An additional claim that must be considered one under the Eighth Amendment is Mr. Jones's argument that his release from prison was improperly delayed.[4] (*See* DE 1 ¶ 330.) A claim for detention after the expiration of a term of imprisonment has three elements:

> (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's right; and (3) a causal connection between the official's response to the problem and the unjustified detention.

*Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010). Such claims are potentially subject to the bar of *Heck v. Humphrey*, 512 U.S. 477 (1994), unless a plaintiff can show that his conviction or imprisonment was "reversed on direct appeal, expunged by executive order,

---

[4] Mr. Jones alleges that his incarceration beyond what he contends should have been his release date violated his due process rights. (DE 1 ¶ 330.) The Third Circuit has made clear that civil-rights claims for "over-detention" are properly analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See, e.g., Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017).

10

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87; *see also Glenn v. Pa. Bd. of Prob. & Parole*, 410 F. App'x 424, 426 (3d Cir. 2011) ("Were we to agree with [plaintiff] that he has been imprisoned beyond the expiration of his sentence, that would necessarily imply that the Parole Board has incorrectly determined his release date or has failed to timely release him. Because no court has so held, [plaintiff's] action is barred by *Heck*.").[5]

Mr. Jones alleges two factual circumstances related to his ultimate release date. First, he alleges that the purportedly false disciplinary proceedings against him in August and September 2011 led to a 180-day loss of commutation time. (*See* DE 1 ¶ 192.) He alleges that, upon an administrative appeal, an associate administrator issued a decision that "rescinded the guilty decision . . . , ordered a new hearing and suspended only a portion of the sanction imposed[;] [s]uspending, in specific, the 180-days administrative segregation aspect of it; 'and not the . . . 180-day loss of commutation time portion of it'." (*Id.* ¶ 211.) Mr. Jones explains that, three days later, defendant Assistant Superintendent Paladino "improperly approved the 180-day loss of commutation time aspect of the sanction." (*Id.* ¶ 212.) Jones says that he appeared before the prisons classification committee on October 19, 2011, at which time he was advised that, due to his loss of commutation time, his release date was changed from May 2012 to November 4, 2012. (*Id.* ¶¶ 247, 252.) During parole proceedings in November 2011, Jones raised his claims regarding the invalidity of the disciplinary charge, but his release date remained November 4, 2012. (*See id.* ¶¶ 264–68.) At the end of May 2012, he submitted a letter and administrative

---

[5] I note that the Third Circuit applies the *Heck* bar to such cases even when a plaintiff is no longer in custody and therefore cannot invoke habeas corpus to in an attempt to meet the *Heck* favorable-termination requirement. *See Deemer v. Beard*, 557 F. App'x 162, 163–67 (3d Cir. 2014). The result may be that, in practical terms, prisoners must usually pursue such claims while incarcerated, or else lose them.

11

grievance to NSP officials claiming that he "was being held beyond his maximum May 17, 2012 sentence date," but the release date remained the same. (*Id.* ¶¶ 314–15.)

This claim appears to be explicitly barred under *Heck v. Humphrey*. In effect, Mr. Jones is asking the Court to determine that the Parole Board's finding as to his proper release date was erroneous. The Third Circuit has specifically found that this sort of claim is barred unless the plaintiff can demonstrate that the propriety of his imprisonment was reversed or at least called into question by an authorized state body, or as the result of a federal habeas proceeding. *See Glenn*, 410 F. App'x at 426. Mr. Jones has not alleged any such circumstances.

Mr. Jones additionally alleges that, on June 14, 2012, he "received notice from the Cumberland County Superior Court Law Division advising him that 314-days of county jail credit being sought by . . . him had been corrected, providing him with an amended Judgment of Conviction (JOC) reflecting this and that NSP OFFICIALS HAD been copied with the same." (DE 1 ¶ 320.) This, he says, should have prompted his release but "NSP officials refused to . . . bring about his release date." (*Id.*) He contends that he further sought 314 days of county jail credits from the Cumberland County Superior Court Law Division; the outcome of that petition is not stated. (*Id.* ¶ 322.) Mr. Jones's actual release date was September 18, 2012.

These allegations are insufficient to state a claim for cruel and unusual punishment. To begin with, Mr. Jones has pled no facts to overcome the bar of *Heck v. Humphrey*. Beyond that, he has not alleged that any specific defendant had knowledge that he was being improperly incarcerated. He has not explained the term of his sentence or the factors employed to determine his ultimate release date, so as to show that his continued incarceration was in fact improper. Neither has he pleaded facts suggesting that any defendant was deliberately indifferent to his improperly prolonged incarceration.

Accordingly, all claims under the Eighth Amendment, except those related to cell assignment as against Sgt. Castro and Sgt. Mercado, are dismissed.

c. **Denial of Access to the Courts**

An inmate has a constitutional right of meaningful access to the courts, which incorporates a right of access to legal reference materials.[6] *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821–28 (1977). This right is not, however, "an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351; *see also Pallipurath v. N.J. Dep't of Corr.*, No. A-1671-15T1, 2017 WL 3297456, at *1 (N.J. Super. Ct. App. Div. Aug. 3, 2017), *certif. denied*, 232 N.J. 54 (2018). Rather, such plaintiffs must allege and demonstrate actual resulting injury—*i.e.,* "that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Thus a plaintiff must describe the underlying, predicate claim with sufficient specificity and must identify the lost remedy. *Id.* at 205–06. Because an access-to-the-courts claim is often redundant—it is ordinarily a backstop for the substantive, underlying claim—a plaintiff must further show that there is no remedy for the claimed harm other than an access-to-the-courts claim. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Monroe*, 536 F.3d at 205–06.

---

[6] The New Jersey Administrative Code also explicitly defines rights of meaningful legal access. N.J. Admin. Code §§ 10A:6-2.1 to -2.16; *see also Taylor v. Hendricks*, No. 04-5864, 2006 WL 2532990, at *3 (D.N.J. Aug. 31, 2006). These statutory rights generally become relevant in judicial review of final agency decisions by the New Jersey Department of Corrections. *See, e.g., Lumumba v. N.J. Dep't of Corr.*, No. A-4784-14T2, 2017 WL 1244337, at *1–2 (N.J. Super. Ct. App. Div. Apr. 5, 2017; *Garcia v. N.J. Dep't of Corr.*, No. A-0277-14T1, 2016 WL 3389774, at *1 (N.J. Super. Ct. App. Div. June 21, 2016); *Conley v. N.J. Dep't of Corr.*, 2008 WL 4108052, at *1–2 (N.J. Super. Ct. App. Div. Sept. 8, 2008). This court lacks jurisdiction to conduct a review of the Department of Corrections' decisions. *See Thompson v. Union Cty. Div. of Soc. Servs.*, No. 07-4928, 2010 WL 457742, at *2 (D.N.J. Feb. 5, 2010) (citing *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 581 (1954)), *aff'd* 389 F. App'x 95 (3d Cir. 2010).

Mr. Jones alleges that submitted "daily law library requests," but generally received law library passes for only a few days per month. (Cplt. ¶¶ 278, 287–88, 306, 318.) He contends that he needed greater law library access "to do the necessary legal research and [to get] basic legal materials to prepare and file pleadings in both his pending legal actions and for contemplated litigation." (Cplt. ¶¶ 282, 289.) Mr. Jones asserts that on April 24, 2012, he requested extended library access from the prison librarian, but that the librarian was unfamiliar with a procedure for extended access. (Cplt. ¶ 307.)

Mr. Jones fails to state an actual injury for the purposes of an access-to-the-courts claim. He details library requests and passes he received, but makes no specific allegations as to how the limitation on access caused him to sacrifice a meritorious claim. "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825)). Pleading an access-to-the-courts claim requires a plaintiff to show "that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and that the underlying claim represented "more than mere hope." *Monroe*, 536 F.3d at 205–06). Mr. Jones has not identified any claim that he lost the chance to pursue. Accordingly, this claim is dismissed upon screening.

### d. False Imprisonment and Due Process Violations

Mr. Jones's false-imprisonment and due-process claims seem to arise from the disciplinary proceedings against him in August–September 2011. These, he says, resulted in punitive cell reassignment, deprivation of eyeglasses and hygiene items, and ultimately the disappearance of some of his property. (*See* Cplt. ¶ 330, 333–34.) As noted above, all of these

claims had accrued by the end of September 2011; they precede the two year limitations period and must be dismissed as untimely. (*See* Cplt. ¶¶ 101–213.)

To the extent that Mr. Jones generally alleges that the defendants violated procedures dictated by Title 10A of the New Jersey Administrative Code, he has failed to identify a specific factual basis for such a claim. (*See* Cplt. ¶¶ 324–25.) Furthermore, violations of Administrative Code provisions alone could not form the basis for a § 1983 claim, which must allege a violation of "a right secured by the Constitution and laws of the United States." *West*, 487 U.S. at 48; *see also Thompson v. Union Cty. Div. of Soc. Servs.*, No. 07-4928, 2010 WL 457742, at *2 (D.N.J. Feb. 5, 2010) ("Section 1983 imposes liability on state actors for violations of rights protected by the Constitution, not for disagreements with state agency decisions."), *aff'd* 389 F. App'x 95 (3d Cir. 2010). To the extent that Mr. Jones alleges that his deprivation of proper wages violated due process (*see* DE ¶ 331), I have noted above that claims concerning this issue are untimely. To the extent that Mr. Jones alleges that extensions of his release date violated due process (*see* Cplt. ¶ 330), the Supreme Court has held that "a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'" *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). Jones is no longer in custody, but beyond that, the reasoning of pp. 10–13 & n.4, *supra*, would call for dismissal, and is incorporated here. Accordingly, Mr. Jones's false-imprisonment and due-process claims must be dismissed.

### e. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The Supreme Court has described this as "a direction that all persons similarly situated

should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). An equal-protection claim thus requires a showing that (1) the plaintiff is a member of a protected class and (2) the plaintiff was treated differently from others similarly situated. *Oliveira v. Township of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002); *see also Johnson v. Fuentes*, 704 F. App'x 61, 65 (3d Cir. 2017); *Kazar v. Slippery Rock Univ.*, 679 F. App'x 156, 162 (3d Cir. 2017); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). Persons are considered similarly situated when they are "alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks omitted).

A successful claim requires proof that the plaintiff have been subjected to intentional or purposeful discrimination. *Hassan v. City of N.Y.*, 804 F.3d 277, 294 (3d Cir. 2015); *Shuman*, 422 F.3d at 151. A plaintiff must show discriminatory purpose by demonstrating that the defendant took the challenged action "at least partially because the action would benefit or burden an identifiable group." *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 548 (3d Cir. 2011) (citing *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009) (finding that stating discrimination claim requires pleading facts that show challenged policy was adopted "not for a neutral, investigative reason but for the purpose of discriminating").

While Mr. Jones nominally invokes the Equal Protection Clause (Cplt. ¶ 325), he has included no facts supporting such a claim. He has not alleged that he is a member of a protected class; nor has he included any facts pertaining to similarly situated persons. Accordingly, any equal-protection claim is dismissed.

**f. Retaliation**

An incarcerated plaintiff may plead a claim for retaliation by alleging that "(1) he engaged in constitutionally protected conduct[,] (2) he suffered an adverse action[,] and (3) the constitutionally protected conduct was a substantial or motivating factor for the adverse action." *Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017); *see also Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001). "'[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000) (alteration in original) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999)); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). It is well established that an inmate's filing of a grievance constitutes conduct protected by the First Amendment. *See Laurensau v. Romarowics*, 528 F. App'x 136, 139 (3d Cir. 2013); *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) ("Filing a formal prison grievance clearly constitutes protected activity . . . ."); *see also Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *Mitchell*, 318 F.3d at 530.

An action is considered adverse if it would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016); *see also Watson*, 834 F.3d at 422 n.6; *Mitchell*, 318 F.3d at 530. Whether the action in question meets this standard "is an objective inquiry and ultimately a question of fact." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012); *see also Allah*, 229 F.3d at 225.

Once a plaintiff has shown evidence of protected conduct and an adverse action, the question is whether there is a causal link between the two. *See Rauser*, 241 F.3d at 333. At that stage, the plaintiff first bears the burden to show that the protected conduct was a substantial or motivating factor underlying the adverse action, and the burden then shifts to the defendant to

17

show that it would have taken the same action regardless of the plaintiff's protected conduct. *Id;* *see also Watson*, 834 F.3d at 831. Where a causal link cannot be shown with direct evidence, a plaintiff may try to satisfy the initial burden circumstantially by demonstrating "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson*, 834 F.3d at 422.

Mr. Jones alleges that virtually all conduct he has described by the defendants, including failure to follow his medical directive, the allegedly false disciplinary charge, the deprivation of wages, the theft of his personal property, and the deprivation of access to the courts, constituted retaliation for his grievance filings and his prior lawsuits against prison defendants. (Cplt. ¶ 335.) As already explained above, claims concerning the bulk of these events must be dismissed as untimely. Most also lack an allegation of circumstances suggesting a causal link.

I conclude, however, that Mr. Jones has included sufficient factual allegations to support retaliation claims against Sgt. Mercado and Lt. Flemming based upon their reassignment of Mr. Jones to F-Unit after he complained about the failure to honor his medical pass for a ground-floor cell assignment. Among other acts, Mr. Jones's allegations that he filed administrative remedy forms and letters of complaint concerning the failure to reassign him to a ground-floor cell clearly constituted conduct protected by the Free Speech Clause of the First Amendment. (*See* Cplt. ¶¶ 307, 309–13.) Furthermore, he alleges that Sgt. Mercado and Lt. Flemming became angry when he made an additional request to be moved and then reassigned him to F-Unit, which he alleges was subject to a "higher level of security." Those allegations, as well as the temporal proximity of the protected acts and the alleged retaliation, could state a claim of an adverse action and purposeful retaliation as a consequence. (*See* Cplt. ¶¶ 290, 316–17.) Accordingly, Mr.

18

Jones's retaliation claim will be permitted to proceed against Sgt. Mercado and Lt. Flemming only.

No other defendant is adequately alleged to have been personal involved in any alleged retaliatory acts. While he alleges that limitations on his library access were retaliatory, he has not alleged that any particular defendant was responsible for granting library access. He contends that the prison librarian, defendant Gillespie,[7] denied a request for extended library access and "claimed to not be familiar with any extended 10A legal access procedure." (Cplt. ¶ 307.) Mere unfamiliarity with proper prison procedures does not suggest a retaliatory motive.

While Mr. Jones seems to allege that searches of his cell after he was transferred to F-Unit were retaliatory, he does not identify any defendant who was responsible for these searches or provide any facts suggesting that they were retaliatory. For these reasons, all claims for retaliation, except those against Sgt. Mercado and Lt. Flemming, must be dismissed.

### g. Conspiracy

Mr. Jones frames virtually all of his claims as conspiracy claims. (*See* Cplt. ¶¶ 324–35.) To state a claim for conspiracy under § 1983, a plaintiff must allege that "persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999), *superseded in part by statute on other grounds as recognized by P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009). A § 1983 claim for civil-rights conspiracy must show an understanding or "meeting of the minds" with facts demonstrating agreement and concerted action. *See Startzell*, 533 F.3d at 205. If there is a lack of direct evidence, an agreement or meeting of the minds may be established by circumstantial evidence, such as by identifying interactions

---

[7] Mr. Jones does not actually list any Gillespie among the defendants in the caption of his pleading or in the "DEFENDANTS" section. (*See* Cplt. at 1 & ¶¶ 6–22.)

19

between the conspirators, the approximate timing of the agreement, the parties in agreement, and the period or object of the conspiracy. *Id.*

For the most part, Mr. Jones does not include any factual allegations that would support an allegation that any defendants agreed or took concerted action to violate his rights. Reading the complaint most favorably to Mr. Jones, however, it could be inferred that Sgt. Mercado's and Lt. Flemming's actions in reassigning Mr. Jones to F-Unit in purported retaliation for his exercise of his First Amendment rights were concerted. (*See* Cplt. ¶¶ 316–17.) Accordingly, Mr. Jones's conspiracy claim against Sgt. Mercado and Lt. Flemming will be permitted to proceed in relation to the cell reassignment, but all other conspiracy claims will be dismissed.

## V. CONCLUSION

For the foregoing reasons, upon screening under 28 U.S.C. § 1915(e)(2)(B), Mr. Jones's claims for deliberate indifference to a medical need against Sgt. Castro and Sgt. Mercado and his claims for retaliation and conspiracy against Sgt. Mercado and Lt. Flemming will be permitted to proceed. All other claims and defendants will be dismissed from this action.

These dismissals are without prejudice to the filing, within 30 days, of a properly supported motion to amend the complaint to cure the deficiencies identified in this opinion. An appropriate order follows.

DATED: February 26, 2019

KEVIN MCNULTY
United States District Judge